

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 04-23178 CIV-MORENO/GARBER**

MORRIS RONALD GOULD
a/k/a RONALD GOULD

                **PLAINTIFF**

vs.

JOHN HARKNESS, JR.
EXECUTIVE DIRECTOR FLORIDA BAR
JACQUELINE NEEDLMEN PLASSNER,
BAR COUNSEL

                    **DEFENDANTS.**

_____/

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

1.     **THE STANDARD OF REVIEW FOR A VIOLATION OF**
        **THE FIRST, FIFTH AND FOURTEENTH  AMENDMENT**
        **PROTECTION FOR COMMERCIAL SPEECH IS**
        **INTERMEDIATE OR  STRICT SCRUTINY.**

        The Bar is not entitled to summary judgment as a matter of law. There is no genuine issue

as to any material fact for which a trial is warranted.  The Plaintiff's affidavit exhibit 1 attached

hereto and made a part hereof is composed of a number of facts which is a history of Plaintiff's

professional background spanning 40 years.

1



Further it is an undisputed fact that the Bar publishes and distributes to the public two

pamphlets which unambiguously informs the public that the sole reason for Rule 10 of The Bar's

Unlicenced Practice of Law (UPL) is for the protection of the public. Exhibit 2-3 attached. (Emphasis

supplied)  It is a fact that the Florida Supreme Court has for more than a generation held "the single

most important concern in the Court's defining and regulating the practice of law is the protection of the

public from incompetent, unethical, or irresponsible representation." Florida Bar v. Moses, 380 S .2d

412 p.417.

Amendments Regulating Bar-Advertising, 762 So .2d 392, p. 396 The Florida Supreme

Court " Specifically, restrictions on commercial speech are subject to :intermediate scrutiny". Jacobs v

The. Florida Bar,  50 F. 3d 901 (11th Cir. 1995), at page906,  "Plaintiff mounts an as-applied

challenge to an allege burden on commercial speech, 'it is well established that the party seeking to

uphold a restriction on commercial speech carries the burden of justifying it.'

See  Edenfield v Fane, 113 S.Ct. 1792,  In Bolger v. Young's Drug Products Corp., 103 S. Ct. 2875,

2882 n. 20 (1983) "Thus the 'governmental body seeking to sustain a restriction on commercial speech

must demonstrate that the harm it recites are real and that its restriction will in fact alleviate them to a

material degree." The Bar at page 4 of its memorandum of law suggests that "Gould can point to no state

or federal legislation that specifically authorizes his conduct." The above cases hold that it is the Bar that

must justify its restrictions on commercial speech not the aggrieved party.

The Bar offers no evidence nor even suggests what harm will occur if Plaintiff practices New York

Law from his Miami office.

2

The Bar concedes that the advertisement exhibit 4 is not misleading but nevertheless declares that Gould

cannot practice New York Law while in Florida. . The Bar fails to provide any articulated explanation why

this would cause harm to the public. . The Bar fails to support its restriction on commercial speech relating

to Plaintiff's advertisement exhibit 5  and why the use of Plaintiff's Miami office will harm the public which

is the only justification for Rule 10. The advertisement exhibit 6 cannot be prohibited because Plaintiff's

federal license allows Plaintiff to practice federal administrative law from his law office in Florida. 5 U.S.C.

sec. 500 (a) (b) & sec 555.   As a matter of law summary judgment for the Bar must be denied.

**2.      MULTIJURISDICTIONAL PRACTICE OF LAW SUPERCEDES
          MUCH IF NOT ALL OF THE CASE LAW, STATUTES AND
          RULES ENACTED PRIOR TO SEPTEMBER 14TH , 2005. CONCERNING THE
          UNLICENSED PRACTICE OF LAW.**

The Bar cites a number of cases all of which pre date the MJP rules.  The Florida Bar v.

Kaiser, 397 So .2d 1132 (1981),  Florida Bar v. Savitt, 363 So .2d 559 (1978),  Florida Bar v. Tate,

552 So .2d 1106 (1989) and Chandris, S.A. v. Yanakakis, 668 So .2d 180 (1995).  These cases

were about OOSL failing to have a disclaimer, appearing in a Florida Court or a federal court located

in Florida without moving Pro Hac Vice.  The Savitt and Yanakakis case also mention that an OOSL

must be in transit and not have a regular presence in Florida.  But none of the cases cited deal with the

prohibition of the establishment of a Florida law office for the practice of the OOSL law of his

jurisdiction.  The issues;  does the Bar's prohibition of "regular presence" in Florida and the

3

establishment of a law office by Plaintiff for the practice of New York Law   survive the present

constitutional challenges raised in the pleading?

The Bar states at page 4 of its memorandum of law  "It shall constitute the unlicensed  practice

of law for a lawyer admitted in a state other than Florida to advertise to provide legal services in Florida

which the lawyer is not authorized to provide." What the Bar claims is unauthorized is that Plaintiff has

a regular presence/residency in Florida.

Further the Bar proclaims Plaintiff may not establish a law office in Florida to practice New

York Law. Plaintiff's law  office established in 1978 is authorized pursuant to  Article VI,  Section 1,

Clause 2, Supreme law.   Sperry v. Florida  ex el The Florida Bar, 83 S.Ct 1322.  established the

doctrine that any licensed lawyer may open a law office in every state and practice federal

administrative law without having a state license where that office is located.  The Florida Supreme

Court recognizes that the Plaintiff may have a regular presence in Florida without running afoul of the In

Re Amend,  To Rules Regulating The Florida Bar,907 S0 .2d 1138, 1141 (FLA. (2005) (MJP rules)

The Florida Supreme Court, MJP rules,  907 So .2d 1138 at page 1140,  "According to the

Bar, the multijurisdictional practice of law includes legal services in any area of the law, which could

occur at any stage of representation.  The client can be either from the state where the lawyer is

licensed ("home state") or where the lawyer wishes to practice or provide the services ("host state").

The activity usually takes place on a temporary or occasional basis.

Currently, the multijurisdictional practice of law is prohibited in Florida." ( MJP)   The practice of New

York Law is now authorized and lawful. See, Lori Holcomb, the Director of the UPL Standing

Committee of The Florida Bar at page 46 lines 1-19 of her deposition.  Exhibit 7.

4

The contemplated UPL is Plaintiff law office in Florida where Plaintiff wants to offer transactional

New York legal services.  The same services authorized only to those OOSL that do not have a

Florida law office or do not have a regular presence in Florida. which equates to citizenship or

residence.   Plaintiff spends 90 days of each year traveling to and from New York and other states

performing legal services within the framework of federal administrative law.  Plaintiff would be traveling

and being out of the State of Florida a longer period of time if Plaintiff could advertise New York legal

services.  Plaintiff would be in transit.

The Bar at page 4 of its memorandum of law states " Gould's proposed advertisements

constitute the UPL and Gould can point to no state or federal legislation that specifically authorizes his

conduct." On the contrary it is not the practice of New York Law which is unauthorized.  The Bar,

once it has authorized the MJP rules for transactional legal matters performed in Florida by OOSL it is

constitutionally impermissible to discriminate against Plaintiff because Plaintiff resides in Florida.   Saenz

v. Roe, 119 S.Ct. 1518 (1999).  At page 1526 N. 17  holds that the founding fathers established two

citizenship one national and the other a state citizenship.  At page 1528, "It rest on the fact that the

Citizenship Clause of the Fourteenth Amendment expressly equates citizenship with residence: "that

clause does not provide for, and does not allow for degrees of citizenship based on length of residence.

Zobel, 457 U.S., at 69, 102 S.Ct. 2309. It is equally clear that the Clause does not tolerate a hierarchy

of 45 subclasses of similarly situated citizens based on the location of their prior residence."

Plaintiff moved from New York State in 1976.  Plaintiff never gave up his license to practice

law.  Plaintiff maintained a law office at all time from 1961 when Plaintiff was admitted to the Bar until

5

the present. Plaintiff travels 90 days a year to and from his New York Law office. Each trip to and from New York to Florida has the same Fourteenth Amendment protection because it is the right to travel to and from anywhere not simply one relocation to another for the balance of ones life.

Rule 4-5.5 UPL at page 1156. It shall be a UPL to have a law office or have regular presence in Florida " except as authorized by other law". The Florida Supreme Court recognizes that federal law authorizes Plaintiff's law office and regular presence in Florida. MJP rules 907 So .2d 1138 at page 1141. Plaintiff must be allowed to practice transactional legal matters under the rules. To do otherwise would nullify Plaintiff's federal license which the State of Florida constitutionally cannot do. Since the MJP rules went into effect 2005 should Plaintiff be classified as a newly arrived citizen of the State of Florida. The Plaintiff by his continuous travel to and from New York for the practice of law should be accorded a newly arrived citizenship status and the protection of the Fourteenth Amendment. The MJP rules provides that no lawyer not admitted in Florida can appear pro hac vice in a Florida Court or appear in a domestic arbitration if the OOSL is a Florida resident. See MJP Rule 1-3.10 (b) (2) page1149 and page 1150 Rule 1-3.11 (b) (2). The words "Florida resident" do not appear relating to the provision of transactional legal matters. "Temporary" provision of transactional legal services is what is contemplated. MJP rules page 1159 the Florida Supreme Court comments. "There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in Florida and therefore may be permissible under subdivision (c). Services may be "temporary" even though the lawyer provides services in Florida on a recurring basis or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation".

6

No limitation is placed on the time spent in Florida, the number of clients, or the type of legal matters that constitute authorized conduct.   No formal state residence is a bar under the rules relating to subdivision (c).  "Temporary" is not defined it is left open.  The term used in the MJP rules "General Practice" is not applicable to transactional legal matters but only to the number of times an OOSL appears pro hac vice or in a domestic arbitration.  The Florida Supreme court uses the phrase "whether a lawyer's services are provided on a "temporary basis" in Florida" clearly refer to the actual provision of the legal service in question not to the time it takes to provide the legal services. As an example plaintiff meets prospective New York clients and spends 40 hours during two months.  Returns to New York where he prepares pleading and files them in a New York Court clearly would be authorized.

The Bar  authorizes  Foreign Legal Consultants, Rule 16 who are lawyers licensed in their home country, to open a law office in Florida to give advice on the law of their jurisdiction.  The present number certified by the Bar is 27. Exhibit 8. The Bar  authorizes House Counsels, Rule 17 which are OOSL from any jurisdiction who are employed by a Florida business organization to provide legal services of any kind to their employer  The present number of house counsel is 480. Exhibit 9.  Ms. Lori Holcomb's deposition revealed at page 33-exhibit 10 that Florida lawyers may still employ foreign lawyers without the requirement that they be certified as foreign legal consultants.. The number of foreign lawyers in Florida are unknown. The Florida Bar has no oversight of this classification.  It could number into the hundreds.  The point being they all have regular presence.  The foreign legal consultants operate out of their own offices.

7

What is the possible legal justification for barring Plaintiff from practicing New York law out of his authorized law office. "Protection of the public from incompetent lawyers."

Plaintiff's practice of law to a needy citizen group is part and parcel of that groups constitutional rights to have access to the courts with counsel of their own choice. This Court should not simply hold that the practice of law is not a privilege, it is not a fundamental right nor is it a suspect classification.

Schware v. Board of Bar Exam. of State of N.M, 77 S.Ct. 752, the Court's opinion written by Mr. Justice Black may be the most cited case relating to an applicants denial of bar admission. Schware v. Board of Bar Exam. of State of N.M, 77 S.Ct. 752,  Mr. Justice Black at footnote 5 commented: "We need not enter into a discussion whether the practice of law is a "right" or "privilege". Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Certainly the practice of law is not a matter of the state's grace. Ex. parte Garland, 4 Wall.333, 379, 18 L. Ed. 366." Would Justice Black declare Plaintiff's "regular presence" or the prohibition of Plaintiffs use of his law office in Florida a "valid reason" for refusal to conduct a lawful practice of law from his Miami law office.

The practice of law particularly in this case should be determined by the societal benefits that the particular practice will achieve. Plaintiff's practice solely concerns a group of Florida residents that cannot be legally assisted by The Florida Bar or OOSL practicing pursuant to the MJP rules. The goal of providing legal help to Florida's middle class who have interstate family or business matters can only be solved by allowing OOSL to open offices in Florida.

Justice Black may very well have found "regular presence" issue arbitrary. Mr. Justice Black supra, at page 756.    "But judicial action, even in an individual case, may have been based on

8

avowed considerations that are inadmissible in that they violate the requirements of due process. Refusal to allow a man to qualify himself for the profession on a wholly arbitrary standard or on a consideration that offends the dictates of reason offends the Due process Clause." Justice Black, supra at page 756 would hold the " prohibition of Plaintiff's law office discriminatory. " Even in applying permissible standards , officers of a State cannot exclude an applicant when their is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. Cf. Yick Wo v. Hopkins, 6 S.Ct. 1064.   Mr. Justice Black at p. 761 stated:

"Admission to practice in a State and before its courts necessarily belongs to that State. Of course, legislation laying down general conditions of an arbitrary or discriminatory character may, like other legislation, fall afoul of the fourteenth Amendment. Cummings v State of Missouri, 4 Wall, 277, 18 L. Ed. 356."   The use of "regular presence" in Florida or a Florida law office to deny Plaintiff the pursuit a lawful profession is arbitrary and discriminatory  and must be declared unconstitutional.  The very use of "regular presence" to bar Plaintiff from practicing his profession across state borders was addressed by Justice Black supra, at p. 756 where he laid down the following precept: "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment. See Ex Parte Secombe, 19 How. 9,13, 15. L. Ed. 565 (Other citations omitted)

Plaintiff is being treated differently from all other New York lawyers because Plaintiff cannot practice MJP under the MJP rules because Plaintiff has a "regular presence" in Florida.   Regular presence is a violation of the due process and Equal Protection Claus. Mr. Justice Black supra, at page 756 found only that the State has valid reasons to exclude someone from the practice of law "such as

9

good moral character or proficiency in its law, before it admits an applicant to the bar, but any

qualifications must have a rational connection with the applicant's fitness or capacity to practice law .

(Citations omitted)

If this court should decide in favor of Plaintiff the advertisements exhibits 4,5,and 6  would not

be misleading because Plaintiff would be authorized to practice New York and federal administrative

law from Plaintiff's Miami office.

The Bar simply ignores the legal requirement of justifying its total ban on the advertisements ex.

4,5 and 6 and the use of Plaintiff's Florida law office for the practice of New York Law.  The old ever

present mantra "protection of the public" is still used as the basis of UPL.  Ms. Holcomb deposition at

page 56-58 exhibit 11,12 and 13 testified  that OOSL who are Florida residents cannot take advantage

of the MJP transactional legal services.  When asked what is the legal justification for this prohibition

"The protection of the public.  If they don't fall within the activities that are allowed by the rules, and ,

therefore, there is no oversight from an unethical standpoint if they were to engage in unethical

conduct".  Plaintiff questions further  " (Q.) I believe  that the  new rules call, without exception, every

lawyer (OOSL) that takes advantage of the multijurisdictional practice rules is acknowledging the fact

that he comes within both the ethical regulations and  professional responsibility regulation of the Bar

(Q) Do you know if there is such a rule? You mentioned it before. (A) Yes.  The Chapter 3 rules put

them on notice and knowledge and under the jurisdiction if they're coming in under a multijurisdictional

practice. (Q) Then if they did something unethical and a person complained, the ethics committee would

take it up. (A) It would be dealt with by the Lawyer Regulation Department. Holcomb deposition

pages

10

The MJP rules provide the public with protection from incompetent and unethical OOS. MJP rules hold that a Florida lawyer who gives legal advice or assistance to any person concerning a legal matter coming within the legal jurisdiction of another state. where he is not admitted constitutes the violation of the Code of Professional Responsibility Holcomb deposition page 55. Exhibit 14. Holcomb further testified at the deposition that it could be a UPL.for such conduct. a Florida Bar Member to o Holcomb deposition page 61 exhibit 15.

This case presents unusual circumstances which rise to the level of a case of first impression dealing with the UPL in Florida. The Florida Supreme Court acknowledges the promulgation of the MJP rules are unique .In re Amendments To The Rules Regulating The Florida Bar And The Florida Rules of Judicial Administration, . 907 So .2d 1138 p.1139 N. 1. " Because the proposed amendments deal with a unique issue". The benefit of establishing these new rules, as The Florida Supreme Court states, is to benefit the public and improve legal services for and to the public. The MJP rules are light years ahead of the archaic UPL rule in effect prior to September 14th, 2005. It is not enough

Plaintiff's advertisements and the use of his law office in Florida for the MJP authorized practice of New York Law is a benefit of the highest order to the public who are sorely in need of these legal services. It cannot be seriously challenged that the benefit to the public of having access to New York legal services from a Florida law office is instant availability at a lower cost. Sperry v. State of Florida ex rel. The Florida Bar, 83 S.Ct. 1322 page 1328, "the regulations have provided since the reorganization of the patent office in 1836 that personal attendance in Washington is unnecessary and that business with the Office should be transacted in writing.

11

The bulk of practitioners are now scattered throughout the country, and have been so distributed for many years. As a practical matter, if practitioners were not so located, and thus could not so easily consult with the inventors with whom they deal, their effectiveness would often be considerably impaired" The establishment of a Florida law office would eliminate most, if not all, cost of traveling to and from Florida to see clients. An important consideration to the public is to have the ability to meet with the OOSL of his choice at almost any time. The benefits are the same for the public to meet at the office of a Florida Bar member relating to Florida law.  Legal cost would increase by the  OOSL cost of airfare, hotel and sundry expenses.  This cost would be passed on to middle class and the economically deprived clients who can  least afford it.

The court should consider when adjudicating this case  whether Plaintiff's regular presence and his law office in Florida cast a doubt on Plaintiff's competency or good moral character.  The only two professed state interest for the UPL.

Plaintiff's economic gain from the practice of New York Law in Florida should not overshadow the public's real need to have access to New York legal services.  Florida Bar members are prohibited from offering legal services for a jurisdiction which they are not licensed.  See Lori Holcomb deposition ex. 14 and 15 page 55 and 61  There is a void in the delivery of authorized MJP transactional legal services which entirely or substantially vitiate the efficacy of the MJP rules. Real life situations have occurred and will continue to occur where citizens of Florida  will lose child custody rights because they will not or cannot go back to their former residence to defend a custody matter.

12

Fail to defend against a divorce proceeding in his/her former residence. Default in court proceeding dealing with foreclosure or actions for money damages initiated in another states jurisdiction. Unsophisticated consumers, more likely than not, would believe that because they moved out of their former jurisdiction a judgment could not follow them to Florida, their new residence. Foreign money judgments are routinely domesticated in Florida where the defendant fails to appear for a court proceeding in his former residence. Only OOSL can offer legal representation to prevent these devastating events.

The American Bar Association (ABA) has recognized the public need to have access to the Civil Courts. The article relates only to the lack of availability of lawyers for poor persons in civil litigation taking place where the poor person resides. Exhibit 16. It is no less important to have available OOSL for these consumers in Florida who need other state law advice.

The Supreme Court has held on a number of occasions that the family deserves the ultimate protection of adjudicating its rights in a court of law. The Court was confronted with a state requirement that a person cannot file for a divorce unless they pay filing fees and court costs. Boddie et al,. V. Connecticut, 401 U.S. 371 (1971. M.L.B. Petitioner v.S.L J. 57 CCH S. Ct. Bull. P. (December 16th, 1996. Held that where the state holds the power over a persons family relationship, terminating parental rights, within a state mandated court proceeding it cannot prevent an appeal from an adverse judgment for lack of the funds to pay for the trial transcript. It was a denial of due process of law and the equal protection of the law. Griffin v. Illinois, 351 U.S. 12 (1956) at page 18

13

"Although the federal constitution guarantees no right to appellate review, id., at. 18 (plurality opinion), once a State affords that right, Griffin held, the State may not "bolt the door to equal justice, id., at 24". The holdings clearly prevent a State from denying access to its courts because a litigant cannot pay the Court filing fees or pay for a transcript of the record in order to appeal.

In view of The Supreme Court's "precedent decisions starting with Griffin v. Illinois, 351 U.S. 12 (1956), through Mayer v. Chicago, 404 U.S. 189 (1971), and beyond, a line of decisions which invokes both equal protection and due process principles." see M.L.B. Petitioners v. S.L.J. 57 CCH S.Ct. Bull. P. Would The United States Supreme Court accord the same value to the public's right to OOSL to vindicate and to protect the public's constitutional rights, especially where the Bar, through its MJP rules authorizes the practice of law from other state jurisdictions and has provided the public with the protection from incompetent or unethical lawyers?

What class of person really benefits from the enactment of the MJP rules? The members of the public who can afford to have their OOSL visit them in Florida while discussing legal matters. It is still unsettled whether the OOSL may advertise his legal services to obtain new client. The MJP rules allow transactional legal services for existing Florida clients and even new clients.

The Plaintiff's advertisements must be allowed so that the public can see that OOSL are available for their legal requirements   Plaintiff's Florida law office must be allowed so that the public can act on those advertisements. T he public's right of assembly  and to petition the government for a redress of their grievances can only be achieved by OOSL where the protection of these rights occur in another state.

14

3.    **PLAINTIFF HAS THE RIGHT TO PRACTICE BEFORE
      FEDERAL ADMINISTRATIVE AGENCIES WITHOUT
      ANY AGENCY AUTHORIZATION.**

Plaintiff may practice before any of the federal administrative agencies solely because Plaintiff is

a member in good standing and admitted to practice before the highest court of the State of New York.

The Administrative Procedure Act (APA,)  5 U.S.C. 500(a) (b)Sec. 555 does not set forth any further

qualifications or admission requirements Attached hereto, marked exhibit 17  FEDERAL AGENCIES-

REPRESENTATIONS OF PERSONS.  (Emphasis supplied)  Exhibit 17 is quite clear at page 4171,

"The bill would do away with agency-established admission requirements for licensed attorneys and

thus allow persons to be represented before agencies by counsel of their choice." Exhibit 18

LEGISLATIVE HISTORY  states " The bill would allow attorneys who are members in good standing

of the bar of the highest court of a state, possession, territory or Commonwealth of The United States,

or The District of Columbia to represent others before any federal agency without making special

application or showing other qualifications."(Emphasis supplied.

4.    **CENTRAL HUDSON GAS & ELECTRIC CORP v.
      PUBLIC SERVICE COMM'n of NEW YORK DOES
      NOT APPLY TO THE ISSUES BEFORE THIS COURT.**

The underlying issues are: (1).  Can the Bar prohibit the Plaintiff from practicing under the

transactional legal matters of the MJP rules?  (2).  Can the Bar prevent the Plaintiff from practicing

New York Law out of Plaintiff's Florida law office.

15

(3). Can the Bar prohibit the Plaintiff from advertising that the Plaintiff is available to represent persons before Federal Administrative Agencies.

The bar prohibition relating to (1) is that Plaintiff is a Florida resident, not in transit and the rules are only available to nonresidents OOSL. The prohibition relating to (2) is that the MJP rules prohibit a lawyer not a member of the Florida Bar from opening a law office in Florida for the practice of transaction legal matter within the confines of the MJP rules. The prohibition relating to (3) is that the Bar prohibits Plaintiff from advertising his availability to represent person before Federal Administrative Agencies because they claim each agency has a right to set their own terms of admission for lawyers who wish to practice before them. None of the claims made by the Bar are solely related to First Amendment issues. They really are prohibitions dealing with whether these prohibitions substantially protect the public from incompetent and unethical lawyers.

The cases cited at page 6 of the Bar's Memorandum of Law has already been held insufficient to sustain a 12 (b) (6) motion. These cases were supplemental authorities requested by the court prior to the courts denying the Bar's 12 (b) (6) motion.

5.     **THIS IS A CLASSIC CASE OF A STATE'S (BAR)
       VIOLATION OF A FOURTEENTH AMENDMENT RIGHT**

Reed v. Reed, 404 U.S. 71 at page 76 held that a State cannot "legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objectives of that statute. A classification "must be reasonable not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the

16

legislation, so that all persons similarly circumstanced shall be treated alike.  Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). Banker's Life & Casualty Co. v. Crenshaw, 108 S.Ct. 1645. "

The Supreme Court of The United States has consistently held, "arbitrary and irrational discrimination violates the Equal Protection Clause under even the most differential standard of review. The question presented by the case, before this court, is whether a difference in the place where Plaintiff lives has any bearing on Plaintiff's competency in the law and of Plaintiff's good moral conduct?

WHEREFORE, Defendant's Motion For Summary Judgment should be denied and Plaintiff is entitled to a Summary Final Judgment.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by U.S. Mail on the 20th day of March, 2006 upon Laureen E. Galeoto, Greenberg Traurig. P.A. 101 East College Avenue (32301) P.O.D. 1838 Tallahassee, Fl. 32302

Morris Ronald Gould
1201 Brickell Avenue, Suite 630
Miami, Florida 33131
(305) 865 2962 fax (305) 861 7272

17

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Cases No. 04-23178,CIV- Moreno**

MORRIS RONALD GOULD
a/k/a RONALD GOULD

        Plaintiff,

FLORIDA BAR, JOHN F. HARKNESS JR.
EXECUTIVE DIRECTOR FLORIDA BAR,
JACQUELYN PLASNER NEEDLEMAN,
FLORIDA BAR COUNSEL

        Defendant.

_____/

## AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1.    .Morris Ronald Gould, Plaintiff in the above titled action, being duly sworn, deposes and states:

2.    Plaintiff is a graduate of New York Law School.

3.    Plaintiff is a licensed lawyer being admitted to practice by the Appellate Division, First Department, Supreme Court of The State of New York.

4.    Plaintiff earned his Masters of Law in Administrative Law and Practice from New York University Law School.

5.    Plaintiff is admitted to practice before the United States District Court for the Southern



District of New York, United States Court of Appeals for the 1st, 2nd, 5th, and 11th Circuits.

6. Admitted to practice before The Supreme Court of The United States.

7. Plaintiff has appeared before or represented clients in all of the above named courts.

8. Plaintiff has maintained New York Law office or has practiced law as an associate or employee since being admitted to practice.

9. Plaintiff has been employed by The Legal Aid Society of New York, Criminal Division.

10. Plaintiff was employed by The United States Department of Justice, Immigration & Naturalization Service (USCIS).

11. Plaintiff was employed as a labor relations attorney for Trans World Airlines.

12. Plaintiff has been employed by or of counsel to various New York law firms or solo attorneys.

13. Plaintiff legal experience has been as a criminal defense lawyer with the Legal Aid Society of New York and as a solo criminal defense lawyer.

14. Plaintiff has engaged in civil rights litigation on behalf of The American Civil Liberties Union and as of counsel to William Kunstler, attorney at law.

15. Plaintiff while employed by TWA engaged in arbitration against the Air Line Pilots Association (ALPA), Airline Stewards Association (ALSSA), International Association of Machinist (IAM)

16. Arbitration locations were New York City, Kansas City, St Louis and Melbourne, Florida

.17. Plaintiff as a solo practitioner in New York City engaged in the general practice of law with a diverse practice.

18. Plaintiff represented Communication Workers of America (CWA) union members in arbitration proceeding against their union and New York Telephone Company.

19.    Plaintiff became a resident in the State of Florida on August 13, 1976.

20.    In 1979 Plaintiff was associated with Alfredo Duran, Florida Bar Member handling his

immigration law practice.

21.    Plaintiff opened his own law office in the offices of Paul, Landy, Beily and Harper.

22.    For a short time plaintiff was referred  all of the firms immigration matters.

23.    Plaintiff has never been sanctioned for any ethics violations or violations of professional

conduct during  44 years of practicing law


STATE OF FLORIDA                     )
                                     )          SS:
COUNTY OF MIAMI DADE                 )

        Sworn to and subscribed before me on this   23   day of    February   2006, Morris Ronald

Gould who personally appeared before me, is [X] personally known to me or [ ] produced _____

_____ as identification, and who did take on oath.


_____
  Morris Ronald Gould


                                        _____
                                        Notary Public, State of Florida


                                        My commission expires:

# Filing An Unlicensed Practice Of Law Complaint



THE FLORIDA BAR

This pamphlet published as a public service for consumers by The Florida Bar.

This pamphlet is published by The Florida Bar Information and Bar Services Department as a public service. Single copies of this pamphlet and others are available upon request by sending a self-addressed, legal size stamped envelope for each pamphlet requested to: Consumer Pamphlets, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300. A complete listing of available pamphlets may be obtained by writing to the address above. The text of each pamphlet is available on The Florida Bar's Internet website (www.FLABAR.org)

A Consumer Guide to
  Client Rights(English)
A Consumer Guide to
  Client Rights(Spanish)
Adoption In Florida
Attorney Consumer
  Assistance Program
Attorney's Fee Profit
Attorney's Fees
Bankruptcy
Buying a Business
Buying A Condominium
Buying A Franchise
Buying A Home
Clients' Security Fund
Complaint Against A Florida
  Lawyer
Consumer Guide To The
  Legal Fee Arbitration
  Program
Divorce's Rights In Florida
Divorce In Florida
Do You Have A Will?(English)
Do You Have A Will?
Family Mediation
Filing A Unlicensed Practice
  Of Law Complaint
Florida Cell-A-Law
Florida Powers of Attorney
Guide To A Florida's Court
  System
Handbook For Jurors
How To Find A Lawyer In
  Florida

How To Resolve A
  Grievance With
An HMO
If You Are Arrested In
  Florida
Juvenile Arrest
Lawyer Referral Service
Legal Aid In Florida
Legal Guide For New Adults
Legal Rights of Senior
  Citizens
Legal Service Plans/Legal
  Expense Insurance
Marriage
Mass Disaster
Notaries, Immigration And
  The Law
Probate In Florida
  (English, Creole, Spanish)
Sexual Harassment In
  The Workplace
Shared Parenting
  After Divorce
So You're Going To Be
  A Lawyer
So You Want To Be A
  Witness
The Florida Bar
U.S. Lawful Permanent
  Residents
What is Guardianship?
What To Do In Case Of An
  Automobile Accident
  (English)
What To Do In Case Of An
  Automobile Accident
  (Spanish)

## WORD ABOUT CONFIDENTIALITY AND COMMUNITY

Once an inquiry is reviewed and a file is opened, the fact that a complaint is pending and the status of the complaint can be disclosed. Once the matter is closed or a recommendation is accepted by the state-wide Standing Committee, the matter becomes public information and the part of the file defined as the UPL record is available to anyone who wishes to see it. A review of files is available only on nonlawyer or revealing at certain times. You should contact The Florida Bar to determine when files will be available. A fee for you and witnesses are not prohibited from talking about your problem with the nonlawyer or with The Florida Bar.

You may also give others copies of any documents that you have made an inquiry with The Florida Bar that you give to or receive from The Florida Bar or the nonlawyer involved.

Because inquiries and complaints are not confidential, you do not have absolute immunity from suit for libel or slander. The general law of libel and slander governs your inquiry. The general law of libel and slander applies. Regrettably, The Florida Bar cannot pre-empt supplies.

If you cannot be successfully sued if you do not act in bad faith or with malice. If you are unsure, you should seek independent legal advice.

*The material in this pamphlet represents general legal advice. Since the law is continually changing, some provisions in this pamphlet may be out of date. It is always best to consult an attorney about your legal rights and responsibilities regarding your particular case.*

## UPL Branch Offices

The UPL department has offices in Tallahassee, Ft. Lauderdale, Tampa, Orlando, and Miami. The addresses are:

**Tallahassee**
The Florida Bar
UPL Department
650 Apalachee Parkway
Tallahassee, FL 32399-2300
(850) 561-5840

**Tampa**
The Florida Bar
UPL Department
Suite C-49, Tampa Airport
Marriott Hotel
Tampa, FL 33607-1442
(813) 875-9821

**Orlando**
The Florida Bar
UPL Department
1200 Eglantine Drive
Orlando, FL 32804
(407) 425-0473

**Ft. Lauderdale**
The Florida Bar
UPL Department
Cypress Financial Center
Suite 835
5900 N. Andrews Ave.
Ft. Lauderdale, FL 33309-2300
(954) 772-2245

**Miami**
The Florida Bar
UPL Department
Suite M100, Rivergate Plaza
444 Brickell Ave.
Miami, FL 33131-2458
(305) 377-4445

The basis of his or her version of what happened. The final decision must depend upon the weight of the available and relevant evidence and testimony

Rev. 9/01

EXHIBIT
2.A-8

## FILING AN UNLICENSED PRACTICE OF LAW COMPLAINT

This pamphlet explains how and where consumer allegations regarding possible unlicensed practice of law (UPL) may be filed. This pamphlet also explains conduct of the nonlawyer cannot be recovered through a Bar unlicensed practice of law proceeding. The Florida Bar unlicensed practice of law proceedings, however, are not established by the Supreme Court of Florida to protect the public against harm caused by unlicensed individuals practicing law. The basic procedures outlined here are designed to prevent misunderstanding.

## WHO REGULATES THE CONDUCT OF NONLAWYERS WHEN THEY ARE ACTING LIKE LAWYERS?

The Constitution of the State of Florida gives the Supreme Court of Florida the power to regulate the practice of attorneys. Through this constitutional grant of authority, the Supreme Court of Florida has the inherent authority to regulate and prevent the practice of law by individuals who are not licensed to practice law in Florida. The court created The Florida Bar to administer the examination which requires all lawyers to be members of that organization which funds the total cost of the lawyer discipline system and the unlicensed practice of law system. The Florida Bar acts as prosecutor in unlicensed practice of law cases, much like the state attorney's office does in criminal cases. Unlicensed Practice of Law (UPL) committees, of which one-third of the members are not lawyers, investigate instances of unlicensed practice of law and report their findings to the Supreme Court of Florida and trials are held before judges, called referees, appointed by the court. The Supreme Court of Florida alone has the power to bring criminal charges against an individual for practicing law without a license.

## WHERE DO I FILE A COMPLAINT?

You may make allegations regarding the unlicensed practice of law by contacting The Florida Bar's UPL offices in your area. The addresses are listed at the end of this brochure.

All matters must be in writing, preferably on a Bar form. If a Bar form is not used, the following language must appear before your signature: "Under penalty of perjury, I declare that I have read the foregoing document and that to the best of my knowledge it is true." If you do not know the foregoing language and that information, the Florida Bar's UPL Counsel.

When filing a complaint, tell the Bar your name, address and phone number as well as the name, address and phone number of the nonlawyer. If you have the information, tell us what you know about any court papers, documents, letters or other materials that pertain to your allegations when you write the Bar office. Please do not send the original documents.

## WHAT IS THE PURPOSE OF THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW?

The purpose of The Florida Bar unlicensed practice of law system is to protect the public. The Supreme Court of Florida can prevent an individual from practicing law by issuing a civil injunction. UPL committees and local circuit committees will be located in the circuit where the alleged conduct took place.

## WHAT HAPPENS AFTER I FILE A COMPLAINT?

Allegations received by The Florida Bar are reviewed by Bar UPL Counsel to determine if The Florida Bar has jurisdiction to investigate the allegations. If The Florida Bar has jurisdiction, the inquiry is considered a complaint. The complaint may be referred to a local circuit committee for investigation or may be investigated by UPL Counsel. The committee will be located in the circuit where the accused resides or does business or where the alleged conduct took place.

## WHAT WILL IT COST ME?

The Florida Bar is not charged for filing an inquiry against a nonlawyer. All members of The Florida Bar are required to pay dues which cover the cost of the unlicensed practice of law program. You may, however, be required to devote some of your time to attend hearings and give testimony. Unlicensed practice of law committee members all donate their time as a voluntary public service and all other costs are paid by The Florida Bar. When the Supreme Court of Florida issues an injunction, the nonlawyer may be ordered to pay the costs involved.

## WILL THE NONLAWYER KNOW ABOUT MY COMPLAINT?

Probably. The nonlawyer may be sent a copy of your complaint during the course of the investigation. Additionally, if the nonlawyer asks who complained, your name will be given. Anonymity will only be granted in extreme circumstances and should be discussed with one of the UPL attorneys before filing.

## WHAT IS A UPL COMMITTEE?

UPL committees of The Florida Bar are made up of volunteer members in your community, at least one-third of whom are nonlawyers. Each of Florida's 20 judicial circuits have at least one such committee.

The local UPL committee investigates complaints and decides whether the evidence shows that an individual practiced law without a license.

The UPL committee may decide whether a trial before a judge is necessary and may make that decision with or without a hearing on your complaint. If the individual involved is present before the UPL committee, you may be given the opportunity to be there.

## WHAT KINDS OF ACTIONS CAN BE TAKEN AGAINST THE NONLAWYER?

If the local UPL committee determines that the conduct does not involve the unlicensed practice of law, that it is an isolated incident which will not be repeated and not result in a likelihood of future public harm, that the individual involved is no longer or that the complaining party does not wish to cooperate with the investigation, the local UPL committee may dismiss the case. If the local UPL committee determines that the individual is engaging in the unlicensed practice of law and that this activity is likely to continue, the commit-

## IS THERE A TRIAL?

If the local UPL committee recommends litigation and litigation before the Supreme Court of Florida is approved, UPL Counsel will file a formal complaint against the nonlawyer before the Supreme Court of Florida. The Supreme Court then appoints a circuit or county court judge as a referee to hold a trial on the matter.

The referee will hear all relevant evidence, which may include your testimony. The referee then makes findings of fact and files a report and recommends to the Supreme Court of Florida.

The Supreme Court reviews the trial record, the referee's report and recommendations. If they find that the individual is guilty of an action for indirect criminal contempt, and to issue an order enjoining the nonlawyer from further activity.

## WHAT CAN I EXPECT?

• You can expect that your inquiry will receive The Florida Bar's prompt and full attention.

• You can expect that every attempt will be made to deal with your inquiry in a manner which is fair to both you and the individual about whom you inquire.

• You can expect to receive written notice of the conclusion of the matter that has been sent as well as notice of the final disposition.

## WHAT SHOULDN'T I EXPECT?

Don't expect your allegation to be decided just because you believe you are right. The nonlawyer is entitled, as are you, to have the matter decided in fairness to you, the nonlawyer about whom you inquire and you can expect the matter to be decided just on







**➤ BAR-RELATED ISSUES BACKGROUND PAPERS**

Online Directory
Organization
Member Services
Consumer Services
Online Media Center
  iNDEX
  Announcements
  Daily News
  News Releases
  Calendar of Events
  Print Quality Images
  Audio/Video
  Resource Guide
  Bar-Related Issues
  Reporter's Handbk.
  Media Registration
  Contact Us
Legislative Info.
Regulation
Professionalism
Links
Service Providers

StoreFront

For The Children
Dignity In Law

Full-Site Search
Contact Us
Open Sitemap
PDF Help

**July 2004**

# Unlicensed Practice of Law

## I. Issue:

A nonlawyer solicits legal business and has business cards printed with the title "attorney" under his name. A disbarred attorney works in the law office of a practicing attorney. The owner of a secretarial service distributes legal forms and advises clients on their rights regarding divorces, adoptions and name changes. State-employed social workers represent in court children who are removed from their parents' care. A large New York law firm opens a Florida office and sends down one of its partners to oversee the attorneys working there. Nonlawyer "notarios" take fees to process immigration forms for aliens seeking citizenship. Are any of these the unlicensed practice of law (UPL)? It depends. Between blatant consumer fraud and legitimate help for those with limited access to the legal system is a vast gray area constantly in the process of being defined by case law, rules changes and dynamics in the law.

The main purpose of UPL investigations and prosecutions is protection of the public from fraud and bad advice affecting legal rights. This is also the focus of the Court in defining UPL.

## II. Bar Position:

### A. American Bar Association:

The ABA adopted rules regarding the multijurisdictional practice of law (lawyers crossing state lines to practice law) in 2002. The ABA adopted a model definition of the practice of law in 2003.

### B. The Florida Bar:

The Florida Bar has been given the authority by the Supreme Court of Florida to investigate and prosecute the unlicensed practice of law. The Bar may seek civil injunctive relief and indirect criminal contempt. Litigation may include a monetary penalty and restitution. The Bar may also issue proposed formal advisory opinions regarding the unlicensed practice of law.

In 2004, The Florida Bar filed proposed amendments regarding the multijurisdictional practice of law with the Supreme Court of Florida.

EXHIBIT

3 A-D

## III. Background:

The Supreme Court of Florida has inherent jurisdiction to prohibit the unauthorized practice of law (see Article V, Section 15 of the Florida Constitution). The Florida Bar, as an official arm of the Court, is charged with investigating and prosecuting matters pertaining to the unlicensed practice of law. (See Chapter 10, Rules Regulating The Florida Bar).

UPL is a product of Florida Supreme Court case law. A broad, general definition and a three-part test were outlined in the *State of Florida v. Sperry*, 140 So. 2d

587 (Fla. 1962). That definition has been fleshed out in casebycase decisions over the years. While the definition of the practice of law has developed through case law, a test is found in *Sperry*:

> We think that in determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.

The basis for judicial/Bar involvement are set forth in *Sperry*:

> The reason for prohibiting the practice of law by those who have not been examined and found qualified to practice is frequently misunderstood. It is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control in the matter of infractions of the Code of Conduct which, in the public interest, lawyers are bound to observe.

The court went on to hold that:

> It would indeed be an anomaly if the power of the courts to protect the public from the improper or unlawful practice of law were limited to licensed attorneys and did not extend or apply to incompetent and unqualified laymen and lay agencies. Such a limitation of the power of the courts would reduce the legal profession to an unskilled vocation, destroy the usefulness of licensed attorneys as officers of the courts, and substantially impair and disrupt the orderly and effective administration of justice by the judicial department of the government; and this the law will not recognize or permit. Protection of the public is the reason for UPL. There is no other justification or reason for the program.

## A. Judicial History:

*State of Florida ex rel. The Florida Bar v. Sperry.* The 1962 UPL case which laid the foundation for the definition of UPL in Florida. The case serves as the benchmark for evaluating if conduct amounts to the practice of law. The *Sperry* case is also notable because it was appealed to the U.S. Supreme Court and the subsequent decision sets forth provisions governing appearances and practices before federal courts and agencies. UPL provisions for such groups depend on the licensing regulations of the forum (such as the Patent Office and Immigration and Naturalization Services) in question.

*The Florida Bar v. Brumbaugh.* A 1978 case which defined how the sellers of forms and "doityourself" legal kits could operate. This case liberalized the former laws by allowing nonlawyers to sell printed material purporting to explain legal practice and procedure to the public in general and to operate secretarial services and type forms for customers, if typists only copy the information given to them in

writing by customers.

*The Florida Bar v. Richard S. Savitt et al.* This 1978 case set forth the guidelines in the area of UPL for interstate law firms operating in Florida.

*The Florida Bar v. Moses.* A 1980 Florida Supreme Court decision which acknowledged a new exception to the *Sperry* decision. Moses appeared before a hearing officer of the state Division of Administrative Hearings, relying on a Florida statute which provided a person is entitled to representation by "counsel or by other qualified representatives." So, nonlawyers may represent individuals in Florida administrative proceedings if they comply with *Moses* and the applicable Florida administrative rules.

*Serena Dunn vs. The Florida Bar et al.* Dunn, an indigent illiterate, filed a class action civil rights complaint in federal court in March 1983 seeking relief against the Bar and Supreme Court for depriving her of Rosemary Furman's verbal assistance. The suit was certified as a class action in 1984. In July 1987, the Florida Supreme Court adopted a UPL rule change which authorizes limited lay assistance. After that opinion, the parties stipulated to the dismissal of the case with prejudice.

*The Florida Bar v. Matus* (528 So.2d 895). A 1988 case which reaffirmed earlier cases by holding that the preparation of immigration forms by a nonlawyer constitutes UPL.

*Nonlawyer Preparation of Living Trusts* (613 So.2d 426). In a 1992 advisory opinion matter, the Supreme Court held that it is the unlicensed practice of law for a nonlawyer to assemble, draft, execute and fund a living trust for a third party. The court also found a conflict of interest should an attorney working for the company prepare the documents.

*The Florida Bar v. Gentz* (640 So. 2d 1105). This 1994 case enjoined several individuals from operating a court. The nonlawyers had set up a court and were granting divorces and name changes. The court found the activity to be the unlicensed practice of law and issued an injunction. Two of the nonlawyers subsequently violated the injunction and were held in contempt of court. The two were sentenced to 160 days in jail.

*Nonlawyer Representation in Securities Arbitration* (696 So. 2d 1178). In a 1997 advisory opinion matter, the Supreme Court held that it is the unlicensed practice of law for a nonlawyer to represent another in a securities arbitration matter.

*The Florida Bar v. Davide* (702 So. 2d 184). In this 1997 case, the court enjoined a legal technician from, among other things, using and advertising under the name Florida Law Center, Inc., as the name is misleading and gives the impression the business has expertise in the field of law.

*The Florida Bar v. Neiman* (816 So.2d 587). In this 2002 case, the court enjoined a nonlawyer who was running a law office. The nonlawyer directed the attorney in what cases to take and how to handle the cases. The nonlawyer also gave legal advice and represented firm clients in mediations and settlement negotiations.

## B. Florida Bar Involvement:

The UPL Department has attorneys in all branch offices: Tallahassee, Orlando, Tampa, Miami and Ft. Lauderdale. With the exception of Tallahassee, the offices are staffed by one Branch UPL Counsel and one administrative secretary. The Tallahassee office is staffed by UPL Counsel, Assistant UPL Counsel, a parttime Branch UPL Counsel, one administrative assistant and one secretary. All UPL attorneys are responsible for attending committee meetings, assisting in investigations and handling litigation. In addition, UPL Counsel is responsible for the administration of the department and the Bar's UPL program. The Assistant UPL Counsel is also responsible for the formal and informal advisory opinion process.

A statewide Standing Committee on the Unlicensed Practice of Law is appointed by the Supreme Court on the advice of the Bar's Board of Governors. The group is required to have 37 members, 18 of whom shall be nonlawyers, appointed to threeyear terms. The standing committee receives and evaluates circuit committee recommendations for prosecution in the Supreme Court of Florida which are then reviewed by a designated reviewer.

Each of Florida's 20 judicial circuits has at least one UPL committee. Each committee must have at least three members, with at least one-third of those members being nonlawyers. The circuit committees investigate all reports of unlicensed practice.

# IV. Facts/Statistics:

- In fiscal year 2003-2004 (July 1 - June 30) there were over 700 UPL cases opened.
- A survey of the UPL process in other states (reported in February 1994) shows that UPL regulations are enforced most frequently by state bar association committee or commissions (18 jurisdictions), followed by state supreme court committees or commissions (15 jurisdictions). Attorneys general prosecute UPL prohibitions in 17 jurisdictions, as do county or local prosecutors in 23 jurisdictions.

Prepared by the Public Information and Bar Services Department with the assistance of the
Unlicensed Practice of Law Department.
The Florida Bar July 2004

PRACTICE LIMITED TO FEDERAL ADMINISTRATIVE LAW
CALL M. RONALD GOULD LICENSED NEW YORK
ATTORNEY 1201 BRICKELL AVENUE, STE. 630
MIAMI, FLORIDA 33131
FREE PHONE CONSULTATION 305 865 2962



EXHIBIT
4

NEW YORK LEGAL MATTER ONLY
M. RONALD GOULD LICENSED NEW YORK
ATTORNEY 1201 BRICKELL AVENUE, STE. 630
MIAMI, FLORIDA 33131
FREE PHONE CONSULTATION 305 865 2962



NEW YORK & FEDERAL LEGAL MATTERS
M. RONALD GOULD LICENSED NEW YORK
ATTORNEY 305 MADISON AVENUE, STE 1166
NEW YORK, N.Y. 10165
FREE PHONE CONSULTATION 212 206 6686



EXHIBIT
6

46

1          In reading the Florida Supreme Court, I

2     guess I'll call it the preamble, it mentioned that

3     it's a radical departure from what had occurred

4     before dealing with the unlicensed practice of law.

5          A.     Correct.

6          Q.     Would you tell me why it's such a

7     radical departure?

8               MR. GALEOTO:  Again I'm going to object

9          to the form here.  You're asking her personal

10          opinion why she thinks the court thinks that?

11     BY MR. GOULD:

12          Q.     Yes.   Your personal opinion.

13          A.     Prior to the issuance of the

14     multijurisdictional practice of law rules, many of

15     the activities were prohibited as the unlicensed

16     practice of law.  The MJP rules authorized activity

17     that would otherwise be unauthorized.

18          Q.     So that is a radical departure.

19          A.     Yes.

20          Q.     I guess I'm correct that these proposed

21     rules were published in 2003 and 2004 in the Florida

22     Bar News.

23          A.     They were published in the Bar

24     News.  I do not recall the date.

25          Q.     And also the Tallahassee Democrat.  That



**EXHIBIT**

**7**

*Worldwide Reporting Service*
Miami ∞ Orlando ∞ Tampa

## Publications

### Directory & Links

# Certified Foreign Legal Consultants

A **Foreign Legal Consultant** is a person admitted to practice in a foreign county as an attorney, counselor at law, or the equivalent, and is certified by the Supreme Court of Florida to render limited services in this state as a legal consultant regarding the laws of the country in which the attorney is admitted to practice. A foreign legal consultant is not a member of The Florida Bar.

There are currently 27 Foreign Legal Consultants.

**Argentina**

Nancy A **Grygiel**                                          Wellington

**Brazil**

Jose Maria **Carneiro**                                   Miami

Jose B do **Nascimento**                             Miami

Adelino **Rosani**                                            Miami

Mary Nery **Werran**                                     Orlando

**Columbia**

Augusto Figueroa **Sierra**                         Miami

**Costa Rica**

Federico **Jenkins**                                       Miami

**Portugal**

Durval deNoronha **Goyos**                        Miami

**Spain**

Luis **Agramunt**                                           Miami

**Venezuela**

Reynaldo **Gadea**                                        Miami

Aris D **Lopez**                                              Miramar

Amparo Silva **Pena**                                    Miami

Armando J **Tirado**                                      Miami

Juan Vicente **Urdaneta**                             Coral Gables

Ruymar **Andrade**                                        Winter Park

Vicente Rafael Perez **Carreno**                   Orlando



**Publications**

Directory & Links

# Authorized House Counsel

An **Authorized House Counsel** is a person licensed to practice in a another state (other than Florida), a U.S. territory, or the District of Columbia who is authorized and certified by the Supreme Court of Florida to provide limited legal services in Florida while exclusively employed by a business organization located in Florida. An authorized house counsel is not a member of The Florida Bar.

There are currently 480 Authorized House Counsel members.

| | |
|---|---|
| Allan **Afrow** | Boca Raton |
| Reece B **Alford** | Jacksonville |
| Patrick M **Altamura** | Lake Mary |
| Bryan S **Anderson** | Juno Beach |
| Thomas I **Anderson** | Jacksonville |
| Ellen W **Anderton** | Tampa |
| Michael J **Antonello** | Boca Raton |
| Laurence B **Appel** | Jacksonville |
| Steven R **Armstrong** | Saint Petersburg |
| Marc A **Aron** | Weston |
| Charles A **Attal** III | Tampa |
| Barry S **Augenbraun** | Saint Petersburg |
| Gordon F **Bailey** III | Jacksonville |
| Stephen R **Baker** | Jacksonville |
| Thomas J **Balkan** | Saint Petersburg |
| Steven W **Ballard** | Tampa |
| Alissa E **Ballot** | Juno Beach |
| Carl **Baranowski** | Saint Petersburg |
| Joy Elizabeth **Barbour** | Fort Lauderdale |
| Mitchell M **Barron** | West Palm Beach |
| David Churchill **Barrow** | Tampa |
| AnnMarie **Barry** | Boca Raton |
| Sheila M **Barry** | Fort Lauderdale |



EXHIBIT
9

33

1  you can turn it over and see when the publication of
2  this magazine was.  On the left-hand side on the
3  bottom under "Attorneys," it has Christina Lindeman.
4  Isn't it a fact that if a person is employed by a
5  Florida law firm that they have to be certified as a
6  foreign legal consultant?
7        A.    No.
8        Q.    So that a law firm can in fact hire
9  people or lawyers from out of the country.  They
10  don't have to get certified.
11        A.    Correct.
12        Q.    And they can offer legal services of
13  their home country jurisdiction.
14        A.    It depends.
15        Q.    And, also, you'll see Martin Klimpel on
16  the right-hand side.
17        A.    Klimpel with a K?
18        Q.    Yes.
19        A.    Okay.
20        Q.    Licensed in Czech Republic only.
21              Now, I've shown you this.  How can I get
22  you to make an inquiry as to whether or not they are
23  practicing, they are guilty of the unlicensed
24  practice of law?
25        A.    You can fill out a complaint form and

**EXHIBIT**
10

56

1          MR. GALEOTO:   Object to the form.

2     BY MR. GOULD:

3          Q.     Again in your opinion.

4          MR. GALEOTO:   I think the question is

5     compound and confusing and is calling for a

6     legal conclusion.

7          THE WITNESS:   I don't really know how to

8     respond to that question.   I think you're

9     mixing apples and oranges.

10    BY MR. GOULD:

11         Q.     What is the reason for saying that a

12    Florida resident should not be allowed to

13    participate in multijurisdictional practice rules?

14         MR. GALEOTO:   Object to the form.

15         THE WITNESS:   A Florida resident can

16    participate in multijurisdictional practice

17    rules.   A Florida resident client.

18    BY MR. GOULD:

19         Q.     Oh, no, no.   A Florida resident lawyer.

20         A.     Oh, okay.

21         Q.     A Florida resident lawyer is prohibited

22    from taking advantage of these rules, correct?

23         A.     That is correct.

24         Q.     And I'm only asking is there any legal

25    or logical reason why?

**EXHIBIT**

11

57

1       A.    The protection of the public.  If they

2   don't fall within the activities that are allowed by

3   the rules, and, therefore, there is no oversight

4   from an unethical standpoint if they were to engage

5   in unethical conduct.

6       Q.    No regulations of those lawyers.  That

7   basically is the reason.

8       A.    There is regulation from an unlicensed

9   practice of law standpoint, but if they were to

10  engage in unethical conduct, then, as this court

11  held, there's little or nothing they can do.

12      Q.    I believe that the new rules call,

13  without exception, every lawyer that takes advantage

14  of the multijurisdictional practice rules is

15  acknowledging the fact that he comes within both the

16  ethical consideration and the professional

17  responsibility of the Bar.

18          MR. GALEOTO:  Object to the form.  I

19      don't know if there's a question pending, but

20      the rules will speak for themselves.

21  BY MR. GOULD:

22      Q.    Do you know if there is such a rule?

23  You mentioned it before.

24      A.    Yes.  The Chapter 3 rules put them on

25  notice and knowledge and under the jurisdiction if



EXHIBIT

12

58

1    they're coming in under a multijurisdictional

2    practice.

3         Q.    Then if they did something unethical and

4    a person complained, the ethics committee would take

5    it up.

6              MR. GALEOTO:  Object to the form.

7              THE WITNESS:  It would be dealt with by

8         the Lawyer Regulations Department.

9    BY MR. GOULD:

10        Q.    And he can't run away.

11        A.    I can't answer that question.

12        Q.    Your jurisdiction goes outside the

13   borders once he acknowledges that he's going to have

14   to comply.

15             MR. GALEOTO:  Object to the form.  What

16        do you mean her jurisdiction?

17   BY MR. GOULD:

18        Q.    Let's go back to the professional

19   responsibility and the ethics.  Wouldn't you agree

20   that the Florida Bar if they were to find a New York

21   lawyer who acknowledges -- he doesn't have to sign

22   anything, just acknowledges it by being here -- that

23   he is bound by whatever they decide no matter where

24   he goes?

25             MR. GALEOTO:  Object to the form.  I

EXHIBIT

13

55

1    York, commits a UPL, a complaint is filed and the

2    regulatory authority in New York sends it to you,

3    he's a Florida lawyer, don't you investigate that?

4           A.    That is not within the scope of my

5    department.   My department would not investigate

6    that.

7           Q.    Because you're saying it's not a UPL.

8           A.    No.   Because it's a member of the

9    Florida Bar who potentially engaged in unethical

10   conduct.

11          Q.    But you're using the word unethical

12   conduct.   I'm using the word unlicensed practice of

13   law because he committed the unlicensed practice of

14   law in New York.

15          A.    If in fact he did commit the unlicensed

16   practice of law in New York, that's a violation of

17   the Code of Professional Responsibility and

18   potentially grounds for discipline in Florida and

19   those are handled by the Lawyer Regulations

20   Department.

21          Q.    In view of the fact that we now have

22   transitory multijurisdictional practice dealing with

23   transactional matters, what is the reason, the

24   logical reason for saying a Florida resident is

25   prohibited from taking advantage of these new rules?



61

1        A.    Where is it?

2        Q.    On the bottom of the left-hand column.

3        A.    Okay.

4        Q.    Now, reading that, isn't it possible

5 that a Florida Bar member giving advice to Florida

6 consumers in Florida on a jurisdiction that he's not

7 licensed can be found guilty of a UPL?  And I'm not

8 talking about sending to Professional Responsibility

9 or Ethics.  I'm talking about a real unlicensed

10 practice of law issue.

11        MR. GALEOTO:  Again, I have to object to

12        the form.  It calls for speculation.  It's

13        clear this footnote is referring to the former

14        rule regulating Florida Bar 4-5.5.

15        MR. GOULD:  And up at to top the other

16        part of the yellow.

17        THE WITNESS:  She's just giving the rule

18        reference.

19        MR. GALEOTO:  Subparts A and B.

20        THE WITNESS:  Prior to the recent

21        amendments.

22 BY MR. GOULD:

23        Q.    Oh, sure.

24        A.    Yes, it is possible.

25        Q.    In the 16 years that you've been



EXHIBIT

## PRESIDENT'S MESSAGE

# COURT ACCESS SHOULD NOT BE RATIONED

## Defined Right to Counsel in Civil Cases Is an Issue Whose Time Has Come

### MICHAEL S. GRECO

IMAGINE FACING A SERIOUS LEGAL PROBLEM—an eviction proceeding, a child custody dispute or a life-and-death health issue—without the assistance of counsel. Countless lower-income Americans face such situations every day without legal help.

Numerous reliable studies at the national and state levels have documented that 70 percent to 80 percent of the civil legal needs of poor people go unaddressed year after year. And a recent study by the Legal Services Corp. found that half of all people seeking legal assistance from LSC-funded programs are turned away because of a lack of resources. The legal needs of the victims of Hurricane Katrina and Hurricane Rita are now compounding the legal aid crisis in the U.S. It is a source of shame and simply unacceptable that in the wealthiest nation on earth, we have failed to make good on the promise of equal justice and equal access to justice for all.

In order to address this situation, I have appointed the ABA Task Force on Access to Civil Justice. The task force is chaired by Howard H. Dana Jr., associate justice of the Maine Supreme Judicial Court and a former member of the board of directors of the Legal Services Corp. The task force members include highly respected and dedicated lawyers and judges from throughout America.

I have asked the task force to help support and expand the network of state Access to Justice commissions that the ABA helped inaugurate several years ago. These commissions, which are in place or planned in 25 states, are helping to build the capacity of state and local legal services programs, expand pro bono efforts, make the courts more accessible to self-represented litigants, and improve cooperation among entities that serve the legal needs of the poor. And these commissions are showing very encouraging results.

### TAKING *GIDEON* FURTHER

EQUALLY IMPORTANT, I HAVE ASKED THE TASK FORCE TO consider another idea whose time has come: the issue of a defined right to counsel in certain serious civil matters, such as those that threaten the integrity of one's family, shelter or health.

In its landmark 1962 decision in *Gideon v. Wainwright,* the U.S. Supreme Court recognized that under our Constitution, an indigent criminal defendant must be provided a lawyer before he or she may be imprisoned behind bars of steel. But 43 years after *Gideon,* we have not yet recognized such a right for poor people facing equally serious civil legal problems that can imprison them just as surely in poverty and despair.

No one in our nation should have to go to court unassisted when facing a problem that could result in loss of shelter, family dissolution or serious adverse health consequences. Americans should not be subject to grievous harm at the hands of a legal system that they cannot navigate or even understand on their own.

If we are to meet the goal of equal justice for all, such critically important legal assistance cannot be rationed by the teaspoonful. Nor should it be subject to long waiting lists, limited capacity and narrow legal aid priority lists that increasingly are based on a triage approach.



Michael Greco: Our legal aid crisis is a source of shame.

The importance of ensuring access to legal services and to justice for the most vulnerable in a democratic society cannot be overstated. The ability of an individual to address civil legal needs with the help of a lawyer can make the difference between stability and poverty, between hope and despair.

I encourage all members of the ABA to follow the work of the Task Force on Access to Civil Justice, and to become engaged in a national dialogue on the idea of a right to counsel in serious civil matters. The legal aid crisis in the U.S. cannot be solved in one year, or even two or three, but it is critically important that we finally commit to doing something about it.

Above the doors to the Supreme Court Building are etched the words "equal justice under law." That eloquent statement, in this bountiful land full of hope and promise, today is hollow rhetoric to far too many in our society. It is our oblig[...] to give life to those words. ∎

EXHIBIT

16

## LEGISLATIVE HISTORY

The conference substitute has reinstated the House provision relating to a national reserve of the cane quota with amendments reducing the amount of the reserve to 16,000 tons and making certain other modifications in its provisions.

It is the intention of the committee of conference that the national reserve provided for cane should be used first for the purposes outlined in the House report on the bill (6,200 tons for a Louisiana processor and the acreage to produce 2,000 tons for a Louisiana producer) and that the balance of such reserves should be used to alleviate hardships and inequities in other areas. Conforming changes with respect to proportionate shares are also made in the conference substitute.

### INDUSTRIAL ALCOHOL

The Senate amendment permits the use of sugar (without regard to quota restrictions) in the production of alcohol, except alcohol and resulting byproducts for human food consumption. The quota exemption under present law applies only to sugar used in the distillation of alcohol, not in the production of alcohol by methods other than distillation. The conference substitute includes this provision of the Senate amendment.

HAROLD D. COOLEY,
W. R. POAGE,
THOMAS G. ABERNETHY,
GRAHAM PURCELL,
JAMES H. MORRISON,
SPARK M. MATSUNAGA,
PAUL B. DAGUE,
PAGE BELCHER,
CHARLES M. TEAGUE,
*Managers on the Part of the House.*

## FEDERAL AGENCIES—REPRESENTATION OF PERSONS

*For text of Act see p. 1303*

Senate Report (Judiciary Committee) No. 755, Sept. 17, 1965
[To accompany S. 1758]

House Report (Judiciary Committee) No. 1141, Oct. 12, 1965
[To accompany S. 1758]

Cong. Record Vol. 111 (1965)

### DATES OF CONSIDERATION AND PASSAGE

Senate Sept. 21, Oct. 20, 1965

House Oct. 18, 1965

The House Report is set out.

## HOUSE REPORT NO. 1141

THE Committee on the Judiciary, to whom was referred the bill (S. 1758) to provide for the right of persons to be represented in matters before Fed-



EXHIBIT

17 A-B

## REPRESENTATION OF PERSONS

eral agencies, having considered the same, report favorably thereon with an amendment and recommend that the bill do pass.

### PURPOSE OF THE AMENDMENT

The principal purpose of the amendment is to exempt practice before the Patent Office with respect to patent matters from the operation of section 1 of the bill as amended. This is accomplished by section 1(d) of the amended bill, a new provision.

Beyond this, the amendment makes certain changes in phraseology designed to simplify and clarify the provisions of the measure.

### PURPOSE OF S. 1758, AS AMENDED

The principal purpose of the amended bill is to provide, as far as practicable, for the right of persons to be represented by any attorney in good standing in matters before Federal agencies. The bill would do away with agency-established admission requirements for licensed attorneys, and thus allow persons to be represented before agencies by counsel of their choice. It would also eliminate the special enrollment requirements for certified public accountants in good standing in representing others in accounting matters before the Internal Revenue Service, but it is not intended to change the scope of service performed by certified public accountants in the practice of accountancy before that agency. Under the bill an agency would be required to deal with a representative qualified in the manner provided by the bill. Finally, for reasons stated below, the bill would exempt from the application of the automatic admission provisions practice before the Patent Office in patent matters.

### BACKGROUND

In past years, many Federal agencies issued regulations requiring application to the agency before attorneys would be deemed acceptable as practitioners. In 1957, the Department of Justice recommended that all agencies discontinue the practice. Most have done so. Today, few retain it, and only two, the Treasury and the Patent Office, object to discontinuing.

Bills having the purpose of abolishing these admission requirements have been introduced in Congress during several recent sessions. Most recently, in the 88th Congress, such a measure, S. 1466, passed the Senate. When the 88th Congress adjourned, Subcommittee No. 3 of this committee, having held a hearing on S. 1466 and similar measures, had voted to recommend enactment of an amended version of S. 1466 which, like amended S. 1758, would have included certified public accountants who practice before the Internal Revenue Service of the Treasury and would have excluded practice before the Patent Office in patent matters. The adjournment of Congress prevented full committee consideration and the measure died.

### TREASURY DEPARTMENT

The Treasury Department's rules and regulations governing the right of attorneys to represent others before its Internal Revenue Service have the purpose of disclosing whether or not the applicant is a person of good moral character. The Treasury assumes that attorneys at law as well as certified public accountants are professionally qualified for tax practice and no

# LEGISLATIVE HISTORY

DEPARTMENT OF JUSTICE,
OFFICE OF THE DEPUTY ATTORNEY GENERAL,
*Washington, D. C., June 10, 1963.*

Hon. JAMES O. EASTLAND,
*Chairman, Committee on the Judiciary,*
*U. S. Senate, Washington, D. C.*

DEAR SENATOR:  This is in response to your request for the views of the Department of Justice on the bill (S. 1466) to provide for the right of persons to be represented by attorneys in matters before Federal agencies.

Under present practice, relatively few Federal agencies (Veterans' Administration, Interstate Commerce Commission, Patent Office in patent matters, and Internal Revenue) require formal admission procedures or special examinations as a condition precedent to an attorney practicing before them.  These agencies, as well as other agencies having administrative boards (including the Department of Justice), also exercise disciplinary authority, such as suspension or disbarment from practice before them, where attorneys have engaged in misconduct before them.

This bill would allow attorneys who are members in good standing of the bar of the highest court of a state, possession, territory, or Commonwealth of the United States, or of the District of Columbia to represent others before any Federal agency without making special application or showing other qualifications.  It would place upon the attorney the responsibility of asserting that he is a member in good standing of the highest court in the jurisdiction where he resides or maintains an office and that he is authorized to represent the party in interest.  Misrepresentation would subject the attorney to penalties under the false statements section of the United States Code (18 U.S.C. 1001).

S. 1466 does not modify the authority of agencies to discipline persons appearing before them, to prescribe qualifications for nonattorneys, or to prevent former employees from representing persons appearing before the agencies to avoid conflict-of-interest situations.  Finally, the bill would permit service upon an attorney known by an agency to be the representative of a person having business before it.

The Department of Justice favors the elimination of special requirements to practice before Federal agencies by attorneys in good standing in the absence of compelling reasons to the contrary.  This Department, by regulation (8 CFR 291.1), has eliminated formal admission procedures and special examinations for practice before the administrative boards and agencies under its supervision.  The Department, however, has retained the power to discipline attorneys and in 8 CFR 292.3 provides for the suspension or disbarment of attorneys on the basis of misconduct observed by Department boards and agencies.

The bill retains in Federal agencies an element of control, particularly in disciplinary situations, and the provision permitting service on attorneys representing interested parties eliminates certain inconveniences and delays in situations where the attorney and his client are in different geographical locations.  Subject to the foregoing, the Department favors the enactment of this measure.

The Bureau of the Budget has advised that there is no objection to the submission of this report from the standpoint of the administration's program.

Sincerely yours,

NICHOLAS deB. KATZENBACH,
*Deputy Attorney General.*

EXHIBIT

18